IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
--------------------------------------------------------X
HERMAN CUNNINGHAM                 Case 1:19-cv-02853-TWT-LTW
Plaintiff,

        vs.

RAS CRANE LLC
Defendant.
--------------------------------------------------------X

# PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO DISMISS

# INTRODUCTION

Plaintiff has plausibly alleged that Defendant RAS Crane LLC, a nonjudicial security enforcer, took and threatened to take a nonjudicial action to effect dispossession of Plaintiff's home when it had no present right to possession of the property because Plaintiff was not in default on his mortgage. In fact, as stated in 19-cv-2296-TWT, Doc. 11, Page 3 of 10 (attached), Cunningham has alleged facts and supplied documentation suggesting that he is current on the mortgage. The Amended Complaint alleges:

2- RAS is a debt collection law firm that represented Plaintiff's mortgage lender.

3- RAS attempted to enforce a security interest upon Plaintiff's home located at 5024 Klondike Rd., Lithonia, GA 30038.

4- RAS attempted to conduct a non-judicial foreclosure on Plaintiff's home

5- The non-judicial foreclosure is the subject of a federal lawsuit pending in the Northern District of Georgia with a case number of 1:19-cv-02296-TWT.

6- RAS took or threatened to take nonjudicial action to effect dispossession of Plaintiff's home.

7- RAS attempted to dispossess plaintiff of his home when it had no right to do so.

8- In 19-cv-2296-TWT (Dkt. 11, Page 7), referenced above, the Court found that based on testimony and evidence, Plaintiff had a substantial likelihood of showing that this foreclosure and this foreclosure attempt was wrongful.

11- RAS is liable to plaintiff because it is taking or threatening to take non judicial action, which it does not have the right to do, to dispossess Plaintiff of his home.

12- This conduct is a violation of the FDCPA at 15 U.S.C. 1692f(6)(A).

**STANDARD OF REVIEW**

At the motion to dismiss stage, the Court accepts all well-pleaded facts in the Plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004); *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the Court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. *Powell v.*

*Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011). "Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because 'it strikes a savvy judge that actual proof of those facts is improbable.'" *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556).

## THE SUPREME COURT'S OBDUSKEY DECISION

The Supreme Court in *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1036 (2019) held that the Defendant is covered by the FDCPA's limited purpose definition. And the limited purpose definition covers taking or threatening to take any nonjudicial action to effect dispossession of plaintiff's property without the present right to possession of the property:

> "For the purpose of section 1692f(6) [the] term [debt collector] also includes any person ... in any business the principal purpose of which is the enforcement of security interests." [§ 1692a(6)]
>
> The subsection to which the limited-purpose definition refers, § 1692f(6), prohibits a "debt collector" from:
>
> "Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—

"(A) there is no present right to possession of the property ... ;

"(B) there is no present intention to take possession of the property; or

"(C) the property is exempt by law from such dispossession or disablement."

## THE DEFENDANT VIOLATED THE FDCPA

The Amended Complaint alleges that RAS Crane lacked a present right of possession of Plaintiff's property and had no right to bring a nonjudicial foreclosure against Plaintiff because as alleged in the amended complaint "it had no right to do so." And as alleged in the Amended Complaint, the Court had found in the companion case to this one that Plaintiff has a substantial likelihood of showing that the foreclosure and the foreclosure attempt was wrongful because Plaintiff was not in default under his mortgage and was current. See Attached Order Page 3 and 7. Defendant does not argue otherwise.

*Obduskey* did not address a debt collector conducting a nonjudicial foreclosure without a present right of possession. Here, Plaintiff is not eligible to be foreclosed against and that provides the basis for a § 1692f(6) claim. A covered entity can violate § 1692f(6) by "taking...any nonjudicial action to effect dispossession...of property" when it has "*no present right to possession of the*

*property*...through an enforceable security interest." 15 U.S.C. § 1692f(6)(a) (emphasis added). "In other words, a party such as RAS Crane must have, not merely a security interest, but a presently operative right of possession in order for its nonjudicial foreclosure to avoid violating § 1692f(6)." *Amodio v Ocwen Loan Servicing, LLC*, No. 3:18-cv-00811, 2019 WL 2162944, at *4 (M.D. Ten. May 17, 2019). See also *Westbrook v. NASA Fed. Credit Union*, No. 3:17-CV-00534-AKK, 2019 WL 1056356, at *3 (N.D. Ala. Mar. 6, 2019) (observing that an entity seeking to enforce a security interest in a property may become liable under § 1692f(6) if it "los[es] its present right to possession" but takes possession anyway); *Wright v. Santander Consumer USA, Inc.*, No. 6:18-cv-263-Orl-22KRS, 2018 WL 2095171, at *4 (M.D. Fla. May 1, 2018) (holding that plaintiff had stated a claim against auto repossessor because he had alleged that his lender "lacked a present interest to possess the" car).

## **DEFENDANT'S ARGUMENTS SHOULD BE REJECTED BY THE COURT**

Defendant states on Page 5 of its brief in support of its motion to dismiss that Plaintiff alleged in his amended complaint that RAS Crane did not credit Plaintiff's payments and that RAS Crane does not have a responsibility to credit Plaintiff's payments. The amended complaint alleged no such thing.

Defendant essentially argues on Page 8 that because it had an enforceable security interest in the property it is not subject to the limited purpose definition of the FDCPA. But Defendant ignores the plain text of the first part of the sentence which states that a nonjudicial security interest enforcer such as Defendant violates the FDCPA if "*there is no present right to the property* through an enforceable security interest." The Defendant would have the statute be read without the italicized words. The Defendant would have a nonjudicial security enforcer not-violate the FDCPA so long as its client had an enforceable security interest in the property even though it did not have a present right to the property. That is a distorted reading.

[A Court should] begin [its] analysis of the statute by reading "the language employed by Congress" and assuming "that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly v. Dollar Park & Fly*, 469 U.S. 189, 194, 105 S. Ct. 658, 83 L.Ed.2d 582 (1985). In other words, if "the statutory text is plain and unambiguous[,] ... we must apply the statute according to its terms." *Carcieri v. Salazar*, 555 U.S. 379, 129 S. Ct. 1058, 1064, 172 L.Ed.2d 791 (2009).

*United States v. Crape*, 603 F.3d 1237, 1242 (11th Cir. 2010).

The Amended Complaint plausibly alleges that RAS Crane threatened to take and took a non-judicial action to effect dispossession of Plaintiff from his home. At this time, it had no present right to possession of the property through an enforceable security interest and the foreclosure and the foreclosure attempt was wrongful because Plaintiff was not in default.

The Court in *James v. Nationstar Mortg.*, LLC, 92 F. Supp. 3d 1190, 1193-1194 (S.D. Ala. 2015) rejected the precise argument that Defendant makes here so a full quote of that portion of the decision is warranted:

> [RAS Crane] [relies] on a strand of authority in which courts have recognized that "Section 1692f(6) only forbids threats against a consumer's property if there is no enforceable security interest in the property." *Jenkins v. BAC Home Loan Servicing, LP*, 822 F.Supp.2d 1369, 1375 (M.D.Ga.2011). So defendants' position is that the mere existence of a security interest, without more, insulates Nationstar from § 1692f(6) liability, as a matter of law.
>
> The trouble with this argument is that it ignores the statutory requirement of a "present right to possession of the property" by the debt collector threatening nonjudicial action. *See* § 1692f(6)(A). Of course, [RAS Crane] would have had a "present right to possession of the property" only if

[Cunningham was] in default when the threat of foreclosure was made. Stated differently, it is the combination of a security interest *and* a present right to possession that precludes debt collector liability under § 1692f(6) for threatening nonjudicial foreclosure proceedings. Abundant case authority supports this plain reading of the statute...... Here, the well-pleaded factual allegations of [Cunningham's] Complaint reflect that the Loan was not in default when [RAS Crane sought to conduct a non-judicial foreclosure of Cunningham's home on June 4, 2019]. Accepting those allegations as true (as the Court must for Rule 12(b)(6) purposes), the Complaint shows that [RAS Crane] lacked a present right to possession of the property when it made the threat. Thus, [RAS Crane] is alleged to have threatened nonjudicial forfeiture of [Cunningham's] home even though it had "no present right to possession of the property" because the Loan on which the security interest was predicated was not in default. In short, plaintiffs have alleged a viable cause of action for violation of § 1692f(6), notwithstanding [Wells Fargo's] security interest in [Cunningham's] home. The Motion to Dismiss will be **denied** as to the § 1692f(6) cause of action.

## CONCLUSION

The motion to dismiss should be denied in its entirety.

Dated this 7th day of August 2019.

          Respectfully submitted,

               By: /s/ Shimshon Wexler
               Georgia Bar No. 436163
               The Law Offices of Shimshon Wexler, PC
               2244 Henderson Mill Rd. Ste 108
               Atlanta, GA 30345
               (212) 760-2400
               (917) 512-6132 (FAX)
               swexleresq@gmail.com



FILED IN OPEN COURT
U.S.D.C. Atlanta

MAY 28 2019

JAMES N. HATTEN, Clerk
By: /s/
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| VERNESSA S. CUNNINGHAM AND HERMAN CUNNINGHAM, <br> Plaintiffs, <br> v. <br> WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE OF THE BANC OF AMERICA ALTERNATIVE LOAN TRUST 2004-5; AND, NATIONSTAR MORTGAGE LLC, D/B/A MR. COOPER, <br> Defendants. | CIVIL ACTION FILE <br> NO. 1:19-CV- 02296-TWT |

## [PROPOSED] [EX-PARTE] TEMPORARY RESTRAINING ORDER REGARDING A NON-JUDICIAL FORECLOSURE SALE AND ORDER TO SHOW CAUSE

### INTRODUCTION

This matter is before the Court on the Plaintiffs' Application for a Temporary Restraining Order and an Interlocutory Injunction [Doc. 6] (the "Application") filed by the named plaintiffs, Vernessa S. Cunningham and Herman Cunningham ("**Applicants**").

The Application having been read and considered, counsel for Applicants having certified to the Court in writing the efforts, if any, that have been made to give notice of the Application to defendants Wells Fargo Bank, National Association, as Trustee of the Banc of America Alternative Loan Trust 2004-5 and

Nationstar Mortgage LLC, d/b/a Mr. Cooper ("**Respondents**"); and,

The Court having considered the full record and all submissions, arguments, and evidence presented, it finds as follows:

## PRELIMINARY FINDINGS OF FACT

This Court has subject-matter jurisdiction under 12 U.S.C. § 2614 and 28 U.S.C. § 1331 because this matter involves claims arising under RESPA, and under 28 U.S.C. § 1367(a) regarding all non-federal-question claims that are so closely related to the RESPA claims that they form part of the same case or controversy.

This matter relates to Applicants' home and principal residence (the "Home") with the following street address: **5024 Klondike Rd. Lithonia (DeKalb County), Georgia 30038** according to the current system of street numbering, and with the following legal description:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 231 AND 232 OF THE 11TH DISTRICT OF DEKALB COUNTY, GEORGIA BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS: TO FIND A BEGINNING POINT, START AT THE INTERSECTION OF THE SOUTHEASTERLY RIGHT OF WAY LINE OF KLONDIKE ROAD WITH THE CENTER LINE OF SOUTH RIVER AND RUNNING NORTH 71 DEGREES 43 MINUTES EAST 126.4 FEET ALONG KLONDIKE ROAD; THENCE RUNNING NORTH 60 DEGREES 38 MINUTES EAST ALONG KLONDIKE ROAD TO AN IRON PIN; THENCE RUNNING NORTH 48 DEGREES 11 MINUTES EAST ALONG KLONDIKE ROAD 165.31 FEET; THENCE RUNNING NORTH 27 DEGREES 51 MINUTES

EAST ALONG KLONDIKE ROAD 166.40 FEET; THENCE RUNNING NORTH 07 DEGREES 08 MINUTES EAST ALONG KLONDIKE ROAD 180.45 FEET TO A POINT; THENCE RUNNING NORTH 14 DEGREES 34 MINUTES WEST ALONG KLONDIKE ROAD 182.22 FEET TO AN IRON PIN AND THE POINT OF BEGINNING; THENCE RUNNING NORTH 26 DEGREES 55 MINUTES WEST ALONG KLONDIKE ROAD 3340.0 FEET TO AN IRON PIN; THENCE RUNNING SOUTH 88 DEGREES 28 MINUTES EAST 973.12 FEET TO A POINT; THENCE RUNNING SOUTH 05 DEGREES 48 MINUTES WEST 299.76 FEET TO A POINT; THENCE RUNNING NORTH 88 DEGREES 28 MINUTES WEST 788.98 FEET TO THE POINT OF BEGINNING. **Tax Parcel ID: 1123201006**.

It appears that Respondents seek to conduct a non-judicial foreclose sale of the Home on June 4, 2019, based on allegations that Applicants have failed "to pay the indebtedness as provided for" in the home mortgage loan secured on the Home. In their Verified Complaint Applicants have alleged facts and supplied documentation suggesting that they are actually current on their mortgage. However, Applicants contend, Respondents refuse to correct their accounting, refuse to respond to their Notice of Error under RESPA, and refuse to accept their monthly $1,087.83 installment payments. In his supporting Affidavit, Plaintiff/Applicant Herman Cunningham testifies that, since February of 2019, Applicants have been depositing all acknowledged-due mortgage installments into a dedicated bank account in an effort to make a continuous tender. Cunningham also testifies that Applicants "are prepared to transfer all of the funds in that bank account (February

2019 mortgage installments through June 2019 installment) into the registry of the Court, and to make all subsequently due mortgage installment payments." Cunningham also testifies that "[w]e currently live in the Home and are maintaining it (as we have done since approximately 1998) as if it were our home," and that as of the date of the affidavit, "the Home is fully insured and maintained, and ad valorem property taxes are paid current, and I intend to keep it that way."

On May 22, 2019, this Court entered a docket notation setting an Ex-Parte Motion for a Temporary Restraining Order down for hearing on May 28, 2019, at 2:00 p.m., granted Applicants' Motion for Leave to Deposit Funds into the Court's Registry [Doc. 5], and issued an Order [Doc. 7] authorizing them to deposit the sum of $5,439.15 — representing the mortgage installments due for February, March, April, May, and June of 2019 — into the Court Registry. It appears that, on May 24, 2019, Applicants deposited deposited the sum of $5,439.15 into the Court Registry.

According to the Declaration of Service filed by counsel for Applicants [Doc. 10], on May 23, 2019, Applicants served the common registered agent for Respondent Nationstar [Doc. 8] and Respondent Wells Fargo [Doc. 9] with the complaint, summons, and a Notice of the May 28th Hearing and Application for

TRO. Applicants' counsel also served Wells Fargo's foreclosure firm, RAS Crane, with written notice of the May 28th Hearing by email on May 22, 2019 at 1:10 p.m. and by via FedEx, which was received on May 23, 2019 at 10:26 a.m. [Doc. 10]

## LEGAL STANDARD

The purpose of a TRO is to "preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction."[1] To be entitled to a TRO or a preliminary injunction an applicant must prove that (1) the applicant's claims "have a substantial likelihood of success on the merits"; (2) the applicant "will suffer irreparable harm in the absence of" a TRO or injunction; (3) the harm the applicant stands to suffer in the absence of a grant of such relief "would exceed the harm suffered by" the opposing party; and, (4) that such relief "would not disserve the public interest."[2]

An applicant for a TRO or a preliminary injunction must ordinarily "give[]

---

[1] See *United States v. Kaley*, 579 F.3d 1246, 1264 (11th Cir. 2009) (citing 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure: Civil § 2951, at 253 (2d. ed. 1995)).

[2] See *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000), *Johnson & Johnson Vision Care, Inc. v. 1-800-Contacts. Inc.*, 299 F.3d 1242, 1246-47 (11th Cir. 2002).

security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." The amount of security to be set is vested in the discretion of the court.[3] However, a proper exercise of that discretion can, in an appropriate case, require no security at all given that Rule 65(c) is generally interpreted to grant trial courts "wide discretion ... in determining whether to require security...."[4] Given that security must only be sufficient to cover damages that would be *likely* to be sustained a court may effectively "dispense with the bond requirement," where the court determines that a potentially improperly issued order is unlikely to cause damages.[5] Such a determination must be made before the court enters its order.[6]

## PRELIMINARY CONCLUSIONS OF LAW

The Court finds that, under the circumstances, Respondents received an

---

[3] See *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir., 1999) (holding that "[a]lthough the district court has discretion to set the bond amount 'in such sum as the court deems proper,' it is not free to disregard the bond requirement altogether").

[4] See, e.g., *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1215 (10th Cir., 2009) (finding no abuse of discretion in a magistrate's finding that issuance of an injunction need not be conditioned on giving security).

[5] See *Corning Inc. v. Picvue Electronics, Ltd.*, 365 F.3d 156, 158 (2nd Cir., 2004) (citations omitted).

[6] Id.

appropriate amount of notice of the TRO hearing. The Court further finds that Applicants have made out a case for the issuance of a temporary restraining order by clear evidence.

Given the testimony and evidence in the record, Applicants appear to have a substantial likelihood of ultimately prevailing on the merits of their claims for violation of RESPA's mortgage-loan-servicing requirements, breach of contract, and wrongful foreclosure or wrongful attempted foreclosure. It is self-evident that the loss of title to and possession of anyone's home would represent irreparable injury in the form of the aggravation, stress, expense, and public humiliation naturally engendered by such an event. The injury with which Applicants are threatened, i.e., the temporary or permanent loss of possession of their Home, outweighs whatever damage a restraining order or an injunction may cause Respondents. No adverse effect on the public interest is presented.

In determining the amount of security to be set pursuant to Rule 65(c) the costs and damages likely to be sustained by Respondents if their foreclosure sale is later determined to have been improperly enjoined, the Court finds that this sum could not reasonably exceed an amount representing the total mortgage installments that Applicants acknowledge to be owed.

To enjoin a nonjudicial foreclosure sale in Georgia, courts typically condition a home owner's right to an injunction against a foreclosing lender on the home owner's tendering "the principal and interest which [the home owner] admits to be due...."[7] Accordingly, this Court finds that the principal and interest that Applicants acknowledge to be due in the form of the installments due from February of 2019 through June of 2019 (five monthly installments of $1,087.83 each, for a total of $5,439.15), and each monthly installment due as of July 1, 2019, until further order of this Court or the final adjudication of this action, represents the amount of security that Applicants must deposit with the Clerk of Court in order to satisfy the conditions of Rule 65(c).

## CONCLUSION

**IT IS HEREBY ORDERED** that the Application for a Temporary Restraining Order be and hereby is **GRANTED**, and that each Respondent — including any individual Respondent's officers, agents, servants, employees, and attorneys, and any person in active concert or participation with any such person who receives actual notice of this Order by personal service or otherwise — be and hereby are temporarily ENJOINED and RESTRAINED, pending the issuance of an

---

[7] See *Oconee Fed. Sav. & Loan Ass'n v. Brown*, 825 S.E.2d 456, 464 (Ga. Ct. App. 2019).

interlocutory injunction, from the following activities:

> PERFORMING ANY ACT THAT REPRESENTS THE ADVERTISING FOR SALE, CRYING OUT FOR SALE, SELLING, AUCTIONING, ENCUMBERING, TRANSFERRING, PHYSICALLY INSPECTING, OR OTHERWISE EXERCISING THE POWER OF SALE GRANTED UNDER ANY SECURITY DEED AFFECTING THE REAL PROPERTY — INCLUDING ANY STRUCTURE THEREON AND ITS APPURTENANCES — THAT IS LOCATED AT 5024 KLONDIKE RD., LITHONIA, DEKALB COUNTY, GEORGIA.

It is **FURTHER ORDERED** that, as a condition of the validity of this TRO Applicants deposit the sum of **$5,439.15** — representing the mortgage installments due for February, March, April, May, and June of 2019 — into the registry of the Clerk of Court no later than the close of business on May 31, 2019, and, further, that they deposit the sum of **$1,087.83** by the fifth calendar day of each subsequent month beginning July 1, 2019.[8]

---

[8] Because Applicants appear to have already made the $5,439.15 deposit, and assuming the deposit is not rejected or rescinded, they shall not be required to re-deposit this sum.

It is **FURTHER ORDERED** that this order be filed forthwith in the Clerk's office and entered of record; that this order shall expire on the (not to exceed 30) __30__ day after its entry, unless sooner dissolved by this Court; and that Applicants' request for a preliminary injunction is hereby set down for hearing for the ~~day of~~ __TO BE DETERMINED__ ~~, 201 at o'clock~~ ~~.m. in Courtroom~~ of the United States District Court for the Northern District of Georgia, Richard B. Russell Federal Building, 75 Ted Turner Drive, SW, Atlanta, GA 30303-3309, and that Respondents are hereby **ORDERED** to show cause at such hearing why this Court should not issue a preliminary injunction.

IT IS SO ORDERED, this __28__ day of __May__, 2019, at __2:45__ o'clock __P__.m.

_____
THOMAS W. THRASH, JR.,
UNITED STATES DISTRICT JUDGE

Prepared and Presented by:
__/s/ Richard S. Alembik__
Richard S. Alembik
Ga. State Bar No. 008770
Attorney for Plaintiffs / Applicants
315 W. Ponce de Leon Ave. # 250
Decatur, GA 30030
(404) 373-0205 / (404)795-8999 FAX
general_mailbox@alembik.com